*482
 
 PER CURIAM.
 
 *
 

 pOn the morning of May 24th, 2009 just prior to 5:00 a.m., Lieutenant Michael Mimms of the New Orleans Police Department responded to a call for police assistance at the Sandpiper Lounge on Louisiana Avenue. Upon arriving at the location, Lt. Mimms was flagged down by three individuals, Mr. McKinley Baptiste, Mr. Lemede, and a female companion of theirs. Mr. Baptiste informed Lt. Mimms that he and the female were standing outside of the Lounge close to the corner when they were robbed by two black males, one of whom he described as approximately five feet, ten inches tall and dressed in a black shirt with blue jeans, and the other he described as being shorter and dressed entirely in white. The female victim gave the same description of the perpetrators to Lt. Mimms. The two informed Lt. Mimms that the perpetrators had, at gunpoint, stolen a wallet from Mr. Baptiste, and the car keys and cell phone of the female, and had then driven off in a four-door vehicle, and that one of the perpetrators had subsequently gone into the Sandpiper Lounge following the incident. Lt. Mimms, accompanied by two other officers as well as Mr. Baptiste and Mr. Le-mede, entered the Sandpiper Lounge. Soon after entering, both Mr. Baptiste and Mr. Lemede identified the defendant Joseph Taylor as the taller perpetrator. The defendant, dressed in a white shirt on top of a black shirt and jeans |2was then arrested, handcuffed, and brought outside the club. Upon exiting, the female victim began to scream that she wanted her keys back from the defendant and attempted to attack him.
 
 [1]
 
 A subsequent search of the defendant did not result in the discovery of the missing property of the victims.
 

 The trial court granted the defendant’s motion to suppress the three witness identifications as unduly suggestive. The Court of Appeal reversed in part, finding the identifications by Mr. Baptiste and Mr. Lemede were not unduly suggestive, but finding that the identification by the female victim was suggestive because of the manner that the defendant was brought out of the Lounge when the identification was made.
 

 We grant the State’s writ application and reverse the trial court’s suppression of the female victim’s identification of the defendant for the following reasons.
 

 A defendant seeking to suppress an identification has a two-fold burden: the defendant must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure used.
 
 [2]
 
 In determining whether an identification procedure is suggestive, the United
 
 *483
 
 States Supreme Court’s decision in
 
 Manson v.
 
 Brathwaite
 
 [3]
 
 is instructive, and provides a five factor test: 1) the witness’s opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the witness during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the witness’s certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and the identification.
 

 |;iWith regards to the first factor of the witness’s opportunity to view the defendant at the time the crime was committed and the second factor of the degree of attention paid by the witness during the commission of the crime, the record reflects Lt. Mimm’s testimony at the motion to suppress to the effect that the female witness gave the same description of the perpetrators’ appearances as Mr. Baptiste and Mr. Lemede.
 
 [4]
 
 Since the female victim’s description was the same, there is no reason to believe she did not get just as good a look at the perpetrators at the time of the crime as the male witnesses did, nor that she paid any less attention while being robbed than they did. Thus, these factors weigh in favor of permitting the subsequent identification’s introduction.
 

 The third factor, that of the accuracy of the prior description, likewise weighs in favor of permitting the identification. The defendant was found inside of the Sandpiper Lounge with a black shirt and blue jeans on, and a white shirt on top of the black shirt. Similarities between the defendant’s appearance and the female victim’s description are strong enough to infer the possibility that the defendant put a white shirt on top of his black shirt in order to conceal his identity.
 
 [5]
 

 The fourth factor, the level of the witness’s certainty at the time of the identification, is not as clear as the other factors. Obviously the victim, at the time she screamed for the defendant to give her keys back and attempted to attack him, | Relieved he was a perpetrator in the crime. However, because one of the officers testified that she may have been intoxicated at the time and because the defendant was in handcuffs, we find this factor weighs in favor of suppressing the identification.
 

 The last factor, that of the time elapsed between the crime and the identification, clearly weighs in favor of admitting the identification. The record reflects that video footage from the Lounge showed the defendant entering the Lounge at approximately 4:53 a.m., roughly eight minutes after the robbery in question occurred.
 
 [6]
 
 Officer Walker, who arrived on the scene at 5:07 a.m., roughly five or six minutes
 
 *484
 
 following the defendant’s arrest, confirmed that when he arrived the defendant was already in the back of a police vehicle.
 
 [7]
 
 With such a crisp time frame involved and capable of being deduced from the record, it appears the actual robbery occurred at 4:45 A.M., and the defendant was apprehended at roughly 5:01 A.M. No more than roughly sixteen minutes elapsed between the time of the robbery and the female victim’s identification.
 

 Thus, four of the five factors at issue weigh in favor of admitting the identification, and ultimately allowing the trier of fact to make its determinations as to the defendant’s guilt.
 

 The ruling of the trial court suppressing the identification of the defendant by the female victim is hereby reversed and this matter is remanded for proceedings not inconsistent with this opinion.
 

 | ¿REVERSED AND REMANDED.
 

 *
 

 Kimball, C.J., did not participate in the deliberation of this opinion.
 

 [1]
 

 . One of the officers involved testified that the victims appeared to have been intoxicated.
 

 [2]
 

 .
 
 State v. Prudholm,
 
 446 So.2d 729, 738 (La.1984).
 

 [3]
 

 . 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
 

 [4]
 

 . Writ Appendix, Ex. F, p. 5 (“Q. Did the female give you a description of the alleged perpetrators? A. Same description.”).
 

 [5]
 

 . In the subsequent investigation, Mr. Taylor in fact stated that when he had arrived at the front door to the Sandpiper Lounge, the security officer informed him that he could not come in with the black shirt he had on. He then returned to his vehicle nearby, and put a white shirt on over his black shirt so that he could be admitted into the Lounge. Writ Appendix, Ex. F, p. 15 (“A. He proceeded to the front door, the security officer told him that he couldn't come in with a black shirt on. He returned to his vehicle, put a white shirt over his black shirt so that he could be admitted ...”).
 

 [6]
 

 .Writ. Appendix, Ex. F, p. 17 ("Detective Sisón told me that he did go into the lounge and view video tape and that the alleged suspect walked in at approximately 4:53 AM which was eight minutes after the armed robbery took place and that that's what he observed on video.”).
 

 [7]
 

 . Writ Appendix, Ex. F, p. 21 (“Again, I think I arrived on the scene around 5:07 AM and it was, you know, five or six minutes after all this occurred within the second district.”); Writ Appendix, Ex. F, p. 15 (“Q. When you got on the scene, was he already in custody? A. That’s correct, He was in the back of one of the second district police cars.”).