STEWART, J.
hThe defendant, Kevin Ray Fisher, was found guilty as charged of two counts of armed robbery with a firearm and given concurrent sentences of 27 ½ years at hard labor without benefit of probation, parole, or suspension of sentence. Asserting that the trial court erred in denying his motion to suppress, in allowing other crimes evidence, and in imposing an excessive sentence, the defendant now appeals his conviction and sentence. Though we affirm the defendant’s conviction for Count II, the armed robbery of the Dollar General Store on North Market (hereafter referred to as the “North Market Dollar General”), for other reasons we must reverse his conviction for Count I, the armed robbery of the Dollar General Store on Greenwood *192 Road (hereafter referred to as the “Greenwood Dollar General”). The defendant’s concurrent sentences are vacated, and the matter is remanded for a new sentence to be imposed.
FACTS
The defendant was arrested on January-10, 2005, when an attempt to rob a McDonald’s restaurant located on Youree Drive in Shreveport during the early morning hours was thwarted by the police after a passerby reported seeing suspicious activity. Detective Rod Demery of the Shreveport Police Department conducted two recorded interviews with the defendant following his arrest that day. In both interviews, the defendant implicated himself in a number of robberies that had recently occurred. The defendant was initially charged with four counts of armed robbery involving three different Dollar General Stores and an Econo Lodge motel as well as with one count of the attempted armed robbery of the McDonald’s.
|2On April 24 and 25, 2007, a hearing was held prior to the start of trial to determine whether the defendant’s statements were given freely and voluntarily. Defense counsel also adopted a pro se motion to suppress that had been filed by the defendant. Detective Demery testified that the defendant claimed to be 17 at the time of his arrest. Demery explained that the age given by the defendant matched information in the police records; therefore, he believed the defendant and proceeded to question him. He advised the defendant both verbally and in writing of his Miranda rights. The defendant waived his rights and admitted during the first recorded interview to participating in a spree of robberies. When the defendant’s mother called and reported that the defendant was actually 16, Detective Demery began the process anew with her present and conducted a second recorded interview after informing them of the Miranda rights and allowing them to speak in private. Detective Demery described the defendant as cooperative, respectful, and willing to talk. He denied using promises, threats, or coercion to elicit the defendant’s statements.
The defendant’s mother, Joyce Marie Fisher Mitchell, first claimed that she had not been allowed to speak privately with her son and that she had not been present for any interview. After the state played parts of the second recorded statement, Mitchell recalled that they had been allowed to speak privately and that she was present for the second interview. However, she continued to deny that he admitted any involvement in the robberies. She answered “no” when asked whether she felt her son had been pressured into talking to the police.
IsAfter considering the testimony and arguments of counsel, the trial court determined that the defendant freely and voluntarily gave both recorded statements. The trial court also heard arguments on the motion to suppress, and upon considering the testimony from the free and voluntary hearing, denied that motion.
As the jury trial was about to begin, the defendant pled guilty to three counts of armed robbery with a firearm and one count of attempted armed robbery with a firearm knowing that he would be sentenced to 19 years as to each armed robbery and seven and one-half years on the attempted armed robbery, all concurrent. However, the trial court agreed to defer sentencing for at least 30 days and indicated there was a possibility that a lesser sentence would be imposed.
Within days, the defendant sought to withdraw his guilty plea. However, the motion to withdraw was not heard until May 15, 2008. The defendant argued that *193 he was not adequately advised when he pled and that he had not had sufficient time with counsel. He also complained that his co-defendants had since gotten more favorable outcomes. On June 11, 2008, the trial court allowed the defendant to withdraw his guilty plea and appointed new defense counsel. The trial court expressed concern that the young defendant had only one personal meeting with counsel during the two years from the time of his arrest until the plea.
New defense counsel filed a motion to quash, which the trial court granted as to the bill for the attempted armed robbery of the McDonald’s. l/The ruling was based on the defendant having been a juvenile at the time of the offense.
Because there was some confusion about whether the trial court had ruled on the motion to suppress, the motion was heard again on December 2, 2009, at which time Detective Demery once more testified about the facts and circumstances of the two recorded statements. Though the trial court had previously denied the motion to suppress on April 25, 2007, this time it granted the motion to suppress as to the first statement given by the defendant without parental consultation or presence. However, the trial court denied the motion as to the second statement given while his mother was present.
On January 13, 2010, the state filed a new bill of information charging three counts and gave notice that it intended to use the defendant’s statement as other crimes evidence.
On January 21, 2010, the state filed an amended bill charging just two counts— Count I being the armed robbery with a firearm of the Greenwood Dollar General and Count II being the armed robbery of the North Market Dollar General. Both included the enhancement for use of a firearm under La. R.S. 14:64.3. That same day the trial court held a hearing on the state’s intention to introduce evidence of other crimes, wrongs, or acts by the defendant, but it did not issue a ruling until trial proceedings began on July 26, 2010. The trial court denied the state’s request to use the attempted armed robbery of the McDonald’s but granted its request to introduce anything the defendant said about his codefendants’ actions and the | jobberies of an Econo Lodge and a Texaco. The defendant’s second statement was redacted for trial purposes to exclude parts that could not be shown to or heard by the jury.
The state presented three witnesses. Emily Pizzolato, an employee of the Greenwood Dollar General, and Megan Lodge, a customer whose purse was taken during the robbery of the North Market Dollar General, testified. In both cases, the robbers wore masks and could not be identified. Detective- Demery testified about what he learned from the defendant during the second interview, which was played for the jury. The defendant did not testify and did not present any witnesses. On July 29, 2010, the jury returned a verdict of guilty as charged on both counts.
On October 28, 2010, the trial court imposed concurrent sentences of 24 ½ years for each armed robbery count and an additional -five years for each count for the firearm enhancement under La. R.S. 14:64.3. Thus, the defendant was to serve 29 ½ years at hard labor without benefit of probation, parole, or suspension of sentence. Prior to imposing the sentence, the trial court reviewed the history of the case, including the defendant’s rejection of favorable plea offers. The trial court noted that, unlike his codefendants, the defendant had been steadfast in his refusal to accept a plea. The trial court also noted that the defendant had admitted involve- *194 merit in other robberies for which he had not been tried. According to the trial court, the defendant had not shown maturity, had not expressed remorse, and had not accepted responsibility for his actions. His demeanor had at times indicated frustration and disapproval toward his attorney, and he appeared not to [ r,realize the unlawfulness of his conduct or the seriousness of his situation. The trial court was firm in its belief that the defendant “does not get it.” In mitigation, the trial court referred to the failure of the first appointed attorney to provide sufficient counsel before the guilty plea. The trial court also noted that the defendant, who was 16 when the offenses were committed, had acted under the strong provocation of an older codefendant, Jonathan Black, and that his mother had died since he had been in jail.
A motion to reconsider the sentence was heard on December 16, 2010. Defense counsel argued that the sentence was too long for such a young offender and that he should not be punished for his behavior before the court. The trial court denied the motion. However, on January 2, 2011, the trial court reconsidered its denial of the motion to reconsider and resentenced the defendant to 22 ½ years on each armed robbery along with five years on each count for the firearm enhancement. Thus, the total concurrent sentence was 27 ½ years at hard labor without benefits. This appeal followed.
DISCUSSION

Denial of the Motion to Suppress

The defendant first assigns as error the trial court’s failure to suppress his second statement. He argues that the totality of the circumstances do not show that his statement was free and voluntary. He suggests that he and his mother lacked sufficient sophistication to realize his first statement would not be admissible and that his mother lacked sufficient information to make an informed decision about whether to advise him to talk to Detective 17Pemery. Finally, he argues that because his second statement was the sole evidence linking him to the two robberies, its admission cannot be considered harmless error.
The state counters that the defendant is seeking to impose a burden not required by law, namely, having to prove the sophistication of the parent. The state notes that defense counsel’s argument before the trial court focused on whether the defendant may have been fatigued by the time of the second statement, not the mother’s alleged lack of sophistication or knowledge. The state asserts that Detective Demery followed the proper procedures in obtaining the second statement and that the trial court was correct in not suppressing it.
When a motion to suppress is filed, the defendant has the burden of proving the ground of his motion, but the state bears the burden of proving beyond a reasonable doubt the admissibility of the purported confession or statement by the defendant. La. C. Cr. P. art. 703(D); State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, 2000-1427 (La.5/11/01), 791 So.2d 1288. Before a confession can be introduced into evidence, the state must affirmatively show that it was “free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.” La. R.S. 15:451; State v. Bowers, 39,970 (La. App.2d Cir.8/19/05), 909 So.2d 1038.
The same constitutional protections — the privilege against self-incrimination and the right to counsel — apply equally to adults and juveniles. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); | 8State v. Fernandez, 96-2719 (La.4/14/98), 712 So.2d 485. The state *195 must show that an accused, who made a statement during custodial interrogation, was first advised of his constitutional rights. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); La. Const. Art. 1, § 13.
In State v. Fernandez, supra, the supreme court overruled State in the Interest of Dino, 359 So.2d 586 (La.1978), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), which had expanded Miranda by requiring the state to affirmatively show that a juvenile had a meaningful consultation with an attorney or an informed parent, guardian, or adult interested in his welfare before waiving his constitutional rights. In place of the Dino requirements, the supreme court reinstated the totality of the circumstances standard for determining whether a juvenile knowingly waived his Miranda rights and made a free and voluntary confession. The court explained:
A confession by a juvenile given without a knowing and voluntary waiver can be, and should be, suppressed under the totality of the circumstances standard applicable to adults, supplemented by consideration of other very significant factors relevant to the juvenile status of the accused.
Fernandez, 96-2719, p. 10, 712 So.2d at 489. Significant factors relevant to the juvenile status of the accused include the juvenile’s age, education, background, experience, and intelligence and whether he had the capacity to understand the warnings, the nature of his rights, and the consequences of waiving them. Id., citing Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).
| nWhether a confession or statement is admissible is a question for the trial court whose conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Thibodeaux, 98-1673 (La.09/08/99), 750 So.2d 916, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). The testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Bowers, supra. In reviewing the correctness of the trial court’s ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. State v. Young, 39,546 (La.App.2d Cir.03/02/05), 895 So.2d 753, citing State v. Sherman, 04-1019 (La.10/29/04), 886 So.2d 1116.
Through the testimony of Detective Demery at the free and voluntary hearing on April 24 and 25, 2007, the motion to suppress hearing on December 2, 2009, and at trial, the record establishes that the trial court did not err in denying the motion to suppress as to the second recorded statement given by the defendant with his mother present. Both the recorded statement and the testimony of Detective Dem-ery show that he advised the defendant and his mother of the Miranda rights and allowed them time to talk privately. Thereafter, the defendant and his mother waived the rights and consented to proceed with the interview. The record shows that Detective Demery inquired into whether the defendant understood his rights, whether he discussed with his mother his rights to have a lawyer present and to remain silent, as well as the fact that anything hnhe would say could be used against him. The defendant affirmed that he had and that there had been no promises, threats, or pressure used against him. The defendant indicated that he had completed eleventh grade and still maintained in the second interview that he was 17, even after his mother reported that he was 16.
*196 After having conducted one interview with the defendant under the justifiable belief that he was 17 and after learning from his mother that he was actually 16, Detective Demery did all he could to follow the proper procedures in conducting the second interview of this teenage defendant with his mother present. Nothing in the record indicates that the defendant lacked the intelligence or capacity to understand his rights and make a knowing and voluntary waiver or that his mother lacked sufficient sophistication or intelligence to meaningfully consult with him about his decision to waive his rights and submit to a second interview.
As expressed in Fernandez, supra, there is no federal or state constitutional basis for invalidating an otherwise valid confession simply because the defendant has not quite reached the age of 17 and achieved non-juvenile status. Here, the totality of the circumstances shows that the defendant waived his Miranda rights and gave a free and voluntary confession. We find no error in the trial court’s ruling and no merit to the defendant’s assignment of error.

Admission ofiOi(B) Evidence

Secondly, the defendant assigns as error the trial court’s ruling allowing the state to present other crimes evidence. The defendant argues |nthat the other crimes evidence was not admissible under La. C.E. art. 404(B). He also argues that the “dearth of other evidence presented at trial” means that the other crimes evidence must have formed part of the basis for his conviction. Thus, its prejudicial effect outweighed its probative value, and its introduction was not harmless error.
The state counters that the other crimes evidence established a pattern of the defendant’s participation in similar robberies and of his receiving money from the robberies. The state asserts that this reflects his knowledge of the crimes and consistent planning.
La. C.E. art. 404(B) states, in relevant part:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Other crimes evidence allowed under La. C.E. art. 404(B) is not admissible unless it tends to prove a material fact at issue or to rebut a defense. State v. Jacobs, 1999-0991 (La.5/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002). Also, the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403; State v. Jacobs, supra.
The trial judge has wide discretion in determining the relevancy of evidence, and its ruling on the admissibility of other crimes evidence will |1gnot be overturned absent a clear showing of an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Cooks, 36,613 (La. App.2d Cir.12/4/02), 833 So.2d 1034.
*197 The improper admission of other crimes evidence is subject to review for harmless error, and the admission will be deemed harmless if the verdict is “surely unattributable to the error.” State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497, writ denied, 2007-2053 (La.3/7/08), 977 So.2d 896.
The state gave notice as required by La. C.E. art. 404(B)(1) of its intent to introduce other crimes evidence provided by the defendant in his second statement to Detective Demery. The trial court ruled that the state could present evidence about the defendant’s involvement in robberies of an Econo Lodge and a Texaco. The trial court denied the state’s request to introduce evidence of the defendant’s involvement in the attempted armed robbery of the McDonald’s, but it allowed the state to question Detective Demery about what the defendant told him regarding the actions of his codefendants, particularly Jonathan Black, with regard to the McDonald’s incident and other crimes that linked to the defendant.
Detective Demery testified that he learned the details of Black’s involvement in the attempted armed robbery of the McDonald’s from the defendant; he did not explain how the defendant knew these details. The defendant told Detective Demery that Black went there at 4:00 a.m. to commit the robbery. As he fled the police, Black discarded a firearm. | ISBlack was apprehended, and a .38 revolver was later recovered from the area. As to the Econo Lodge robbery, the defendant told Detective Demery that he waited in the parking lot while Black went inside to commit the robbery. Black returned with about $200, including a pocketful of change. The defendant also told Detective Demery that Black used the same .38 revolver to rob the Econo Lodge and that Black wore a red mask. Detective Dem-ery said that the witness Megan Lodge likewise recalled that the person who robbed the North Market Dollar General wore a red mask. As to the defendant’s information about the Texaco robbery, Detective Demery testified that the defendant claimed that he waited in the car while Black committed the robbery and that Black gave him $50 from the robbery.
In addition to hearing Detective Dem-ery’s testimony, the jury heard the defendant’s recorded statement in which he discussed the robberies of the Econo Lodge, the Texaco, and the North Market Dollar General. The defendant’s statement implicating himself in the commission of the crimes for which he was not charged showed opportunity, intent, knowledge, preparation and plan with regard to these crimes and certainly the robbery of the North Market Dollar General. In each of these instances, the defendant placed himself with the main perpetrator, Black, who entered the businesses to commit robbery while the defendant waited in a vehicle and received a share of the money from the robberies. The defendant had knowledge of the .38 revolver used by Black and indicated that he had procured the firearm for Black. The other crimes evidence was of great probative value in demonstrating the defendant’s involvement in these similar robberies, particularly since no witness identified the perpetrators.
114For these reasons, we find no abuse of discretion by the trial court in allowing the introduction of other crimes evidence. However, in reviewing this assignment, our attention focused on the defendant’s conviction for Count I, the robbery of the Greenwood Dollar General, which we now address.
Count I- — Greenwood Dollar General
Our close examination of this record in reviewing the assigned errors brought to our attention the absence of *198 evidence supporting the defendant’s conviction for Count I.
In State v. Russell, 448 So.2d 798 (La. App. 2d Cir.1984), writ denied, 450 So.2d 956 (La.1984), this court reversed a conviction for solicitation with intent to engage in indiscriminate sexual intercourse for compensation upon finding no evidence that the defendant solicited the undercover officer. Apparently, the issue of sufficiency of the evidence in Russell was briefed but not assigned as error. Though recognizing that insufficiency of the evidence could not be reviewed in the absence of an assignment of error or motion for a new trial and that it does not constitute error patent, this court concluded:
However, if in some fashion — either through a motion for a new trial, assignments of error filed in the trial court, or as here, where the court happens to review assignments which are briefed but not filed — the court determines that the evidence is insufficient to sustain a conviction, then it is our obligation to address this issue.
Id., at 800.
This court’s decision was based on State v. Raymo, 419 So.2d 858 (La.1982), wherein the supreme court set aside the defendant’s forgery | ^conviction because there was no evidence that the. defendant intended to prejudice the rights of another. Though the defendant had filed assignments of error, none pertained to the sufficiency of the evidence. Moreover, the opinion does not indicate that the defendant had filed a motion for a new trial. Nevertheless, the supreme court determined that where the state’s case is “devoid of evidence of an essential element of the charged offense,” it must set aside the conviction and sentence “regardless of how the error is brought to the attention of the reviewing court.” Id.
Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation while armed with a dangerous weapon. La. R.S. 14:64(A). The law of principals is set forth at La. R.S. 14:24.
To prove its case as to Count I, the state presented the testimony of Emily Pizzolato and Detective Demery in addition to playing the defendant’s second statement for the jury.
Pizzolato was working at the store at the time of the robbery. She testified that she was stocking shelves in the back left corner of the store when she heard the door open. She saw two masked men with guns and heard them demand money. She went into a storage room where she remained until the robbery was over. She had no contact with the perpetrators and could not identify them.
In his testimony, Detective Demery referred to the period from October to mid-January as the “robbery season.” He stated that a number of | ^businesses had been robbed during the latter part of December 2004 through January 2005 and that the investigation had developed a pattern of two individuals committing robberies. Detective Demery testified as to details provided by the defendant about the robberies of the North Market Dollar General, the Econo Lodge, and the Texaco. However, his testimony did not include any details about the defendant’s alleged involvement in the robbery of the Greenwood Dollar General. At most, Detective Demery claimed there was a pattern or some similarity between the robberies of the Dollar Generals. His reference to these similarities was vague at best.
Our review of the defendant’s second statement shows that Detective Demery questioned him about the Dollar General *199 robbery where the customer’s purse was stolen; this was the North Market robbery, not Greenwood. The defendant’s recorded statement does not include any specific reference to or details about the robbery of the Greenwood Dollar General. He did not confess to any involvement in a robbery of the Greenwood Dollar General.
The state is required to prove each element of the crime charged beyond a reasonable doubt. U.S. Const. Amend. XIV; La. Const. Art. I, § 2; La. C. Cr. P. art. 804; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under the Jackson sufficiency of the evidence review, we are required to view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Here, there is simply no evidence of the defendant’s involvement in the h7robbery of the Greenwood Dollar General. There is no evidence as to Count I to view in the light most favorable to the state.
Detective Demery’s testimony that the robbery of the Greenwood Dollar General had similarities to the robbery of the North Market Dollar General is the sole “evidence” of the defendant’s guilt. Even if there are similarities among the Greenwood Dollar General robbery and the robberies addressed by the defendant in his second statement, the similarities do not suffice to prove beyond a reasonable doubt that the defendant committed the offense. There was not even any evidence presented to show that the Greenwood Dollar General robbery was committed by Johnathan Black, the person indicated by the defendant’s statement to be the main perpetrator of the robberies.
The record is devoid of proof as to defendant’s commission of the armed robbery of the Greenwood Dollar General. For this reason, we are constrained to reverse the defendant’s conviction and sentence for Count I charging him with the armed robbery with a firearm of the Greenwood Dollar General.

Sentencing

The defendant also assigned as error the excessiveness of his sentences. The trial court imposed concurrent sentences for the two offenses. Because we are reversing the conviction for the Greenwood Dollar General robbery, we find it necessary to remand this matter for resen-tencing. We cannot discern whether the fact that the defendant was found guilty by the jury of both offenses influenced the sentences imposed |18by the trial court. Additionally, the trial court did not order a presentence investigation report before sentencing this young offender. In giving reasons for the sentencés imposed, the trial court referred to the defendant’s attitude in court toward counsel and the fact that the defendant had rejected plea offers. Though we cannot say that the trial court improperly relied on these considerations in imposing its sentence, we caution that the sentence should reflect the crime committed, not the defendant’s courtroom demeanor or decision to go to trial. In light of these considerations, we find that remand is appropriate for a new sentence to be imposed for the conviction on Count II.
CONCLUSION
For the reasons explained, we affirm the defendant’s conviction for Count II, the armed robbery with a firearm of the North Market Dollar General; we reverse the defendant’s conviction for Count I; we vacate the sentences; and we remand the matter for imposition of a new sentence on Count II.
AFFIRMED IN PART and REVERSED IN PART.
*200 SENTENCE VACATED and REMANDED FOR SENTENCING.