PER CURIAM.
| ^Granted. The trial court erred in granting defendant/respondent’s motion to suppress on grounds that intoxication rendered her statements to the police involuntary. Although in the past this Court rejected the view in other jurisdictions that “a confession may be involuntary in the due process sense only where the de-clarant has been subjected to police custody, external pressure or coercion,” State v. Glover, 343 So.2d 118, 128 (La.1976) (on reh’g) (statements made by defendant to his former common-law wife wired for sound by the police rendered involuntary as a result of defendant’s florid undifferentiated schizophrenia), our current jurisprudence subscribes as a matter of state law to the rule of Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986), that “coercive police activity is a necessary predicate to the finding that a confession is not ‘voluntary’ within the meaning of the Due Process Clause of the Fourteenth Amendment.” See, e.g., State v. Square, 10-2414 (La.11/3/10), 46 So.3d 1239, 1240 (trial court’s suppression of defendant’s spontaneous statements was “contrary to the larger body of jurisprudence on voluntariness”) (citing Connelly); State v. Schrader, 518 So.2d 1024, 1027 (La.1988) (“[A]n essential prerequisite for suppressing a statement on voluntariness grounds is misconduct or overreaching by the police.”) (citing Connelly); see also State v. Green, 655 So.2d 272, 279, n. 7 (La.1995) (“This Court has endorsed, without much discussion, the Supreme Court’s current approach.”) (citing Schrader). The same standard governs the voluntariness of an antecedent waiver of rights conferred by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Connelly, 479 U.S. at 169-70, 107 S.Ct. at 523 (“There is obviously no reason to require more in the way of a ‘voluntariness’ inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context.”).
Connelly has therefore also modified our former jurisprudential rule that intoxication may negate the voluntariness of a statement if it is of such a degree that it renders the defendant “unconscious of the consequences of what he is saying.” State v. Simmons, 443 So.2d 512, 516 (La.1983). After Connelly, diminished mental capacity, which may result from intoxication, remains relevant to the voluntariness of a statement only to the extent that it “made mental or physical coercion by the police more effective.” United States v. Chrismon, 965 F.2d 1465, 1469 (7th Cir.1992); see also United States v. Gaddy, 532 F.3d 783, 788 (8th Cir.2008) (test is “whether these mental impairments caused the defendant’s will to be overborne”) (internal quotation marks and citation omitted). In the present case, the record overwhelmingly demonstrates that the police were exercising their | o,community caretaking functions in responding to reports of defendant’s erratic driving, and to her unsteady appearance, slurred speech, and the reasonable possibility she was experiencing a drug overdose, when they questioned her and summoned Emergency Medical Services, and that the officers used no coercive measures in securing her statements after advising her of her Miranda rights following the discovery in her car of pill bottles in the name of her friend and former employer (and victim of a homicide). See Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (“Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition *1026 of evidence relating to the violation of a criminal statute.”).
Thus, for due process purposes, defendant’s statements were not involuntary, i.e., they were not the products of a will overborne by police coercion. Nor, in purely statutory terms, were they the product of “fear, duress, intimidation, menaces, threats, inducements or promises.” La. R.S. 15:451. While intoxication remains relevant to the question of whether a Miranda waiver is not only voluntary but also knowing and intelligent, United States v. Cristobal, 293 F.3d 134, 142 (4th Cir.2002) (“Unlike the issue of voluntariness, police overreaching (coercion) is not a prerequisite for finding that a waiver was not knowing and intelligently made.”) (citations omitted), in the present case, we need not resolve the question of whether defendant, who appeared to the officers to understand the explanation of her Miranda rights, made a valid waiver when she continued [4to respond to questioning in a coherent and rational manner although she also appeared heavily “narcot-icized.” Compare State v. Rankin, 357 So.2d 803, 805 (La.1978) (uncontradicted evidence that defendant at the time of arrest was “intoxicated and disoriented, confused and irrational,” made it “clear that defendant was not capable of understanding his Miranda rights and making a free and voluntary confession due to his intoxicated condition.”). The record also indicates that the police did not take defendant into custody for purposes of Miranda, rendering advice of her rights not only precautionary but also necessary, until the officers separated her from the EMS personnel and placed her in a patrol unit after the officer who had initially retrieved the pill bottles went back inside the vehicle and discovered a gun concealed under the driver’s seat of her car. Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994) (In determining when a person has been taken into custody for purposes of Miranda, “the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.”) (internal quotation marks and citations omitted). Investigation of a crime may have begun or intensified the moment the officer initially retrieved the pill bottles from defendant’s car and read their labels, but “[i]t was the compulsive aspect of custodial interrogation, and not the strength or content of the government’s suspicions at the time the questioning was conducted, which led the court to impose the “Miranda requirements with regard to custodial questioning.” Beckwith v. United States, 425 U.S. 341, 346-47, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (internal quotation marks and citation omitted). This Court has consistently held that Miranda warnings are not required when the law officer is making a general, on-thej5eene5 investigation to determine whether there has been the commission of a crime, and, if so, by whom.” State v. Davis, 448 So.2d 645, 651 (La.1984) (citations omitted); see, e.g., State v. Shirley, 08-2106, pp. 8-10 (La.5/5/09), 10 So.3d 224, 229-30 (Miranda warnings not required to admit defendant’s statements following an accident in which she flipped her car and killed her passenger that she did not see a stop sign and had had “two Smirnoffs and two Bud-lights;” “an individual’s responses to on-the-scene and non-custodial questioning, particularly when carried out in public, are admissible without Miranda warnings.”) (citations omitted); cf. Wilson v. Coon, 808 F.2d 688, 690 (8th Cir.1987) (“Detention for a medical examination is not a situation that a reasonable person would find inherently coercive in the sense required by Miranda.”). A valid waiver of Miranda rights is thus not a prerequisite for admit *1027 ting defendants otherwise voluntary statements into evidence in the present case.
Reversed and remanded.