BROWN, Chief Judge.
|, Following a jury trial, defendant, Michael Glenn, was convicted of armed robbery with a firearm and possession of a firearm by a convicted felon. He was subsequently adjudicated a second felony habitual offender and sentenced to 55 years at hard labor for the armed robbery conviction, plus five years for the firearm enhancement to be served consecutively. For possession of a firearm by a convicted felon, he was sentenced to ten years at hard labor to be served concurrently with the other sentences. The court ordered all of the sentences to be served without the benefit of parole, probation, or suspension of sentence.[1] Defendant now appeals, arguing that the trial court erred in denying his motion to suppress the one-on-one identification and his confession. We affirm defendant’s convictions and sentences.

*528
Facts

On May 20, 2013, Tamara Nicole Howard was working as the front desk clerk at the Regency Inn Hotel on Monkhouse Drive in Shreveport, Louisiana. At approximately 11:35 p.m., as she was putting money in an envelope to end her shift, a black male approached the front desk counter, stood “right over” her and said, “Bitch, give me that,” demanding that Howard give him the money. The man produced a handgun equipped with a red laser sight and pointed it at Howard, who “freaked out” and backed away. The man jumped over the counter and said, “Bitch, you looking for me. I’m right here,” and continued to point the handgun at Howard. 12Howard was able to escape from the area behind the counter. The man took $300 out of the cash register behind the counter and ran out of the hotel.
Officers were dispatched to the hotel, at which time Howard provided them with a description of the suspect. Howard described the man as tall, black, in his late 30s or early 40s, and wearing a striped shirt. The officers reviewed the hotel surveillance video, which corroborated Howard’s description of the suspect. In reviewing the video, the officers noticed that the suspect was also wearing white tube socks pulled up to his mid-calf. Howard testified that she did not watch the hotel surveillance video before she gave the officers a description of the suspect.
Officer Christopher Hodges and Sergeant Brent Mason found a man wearing a striped shirt and tube socks that matched the description of the suspect at the Bay-rriónt Inn Hotel, which is located across the street from the Regency Inn Hotel. The man led the officers on a brief foot chase, but was ultimately apprehended while trying to hide under a parked vehicle. The man was later identified as defendant, Michael Glenn. The officers had to use force to subdue Glenn, including kicking and striking him, after which Glenn appeared to be unconscious for one or two seconds. The officers searched Glenn and recovered a handgun with a red laser sight attached to it, cash, and a crack pipe from his front pockets. Glenn was treated at the scene for an abrasion to his forehead.
Approximately 30 minutes after the offense, Corporal Michael E. Carter drove Howard across the street to the Baymont Inn Hotel so that she could “identify the person that robbed her at gunpoint.” Howard remained |sin the back seat of the police car, but stated that she could clearly see Glenn. At that time, Glenn was standing in a spotlight, between two police officers, in handcuffs, and beside a police car. Glenn was wearing the same clothing as Howard had described to the officers. Glenn was bleeding from the wounds to his head, which occurred when he was apprehended. Howard identified Glenn as the person who robbed her at the hotel. Howard testified, “once somebody robs you at gunpoint, you won’t forget that face. I don’t care if it happened in a second, you’re going to remember that person’s face.”
Glenn was taken to the police department, where Detective Richard Turpén conducted a recorded interview. Detective Turpén advised Glenn of his Miranda rights, and Glenn signed a written waiver of his rights and indicated that he wanted to make a statement. In the recorded interview, Glenn confessed to the armed robbery and indicated that he had consumed alcohol and smoked crack cocaine prior to the robbery. After the interview, Glenn was taken to the city jail, which refused to book him until he was taken to LSU hospital for further treatment. Glenn was taken to the hospital and then transferred back to the jail.

*529
Discussion

Motion to suppress the one-on-one show-up identification

One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. State v. Bickham, 404 So.2d 929 (La.1981); State v. Tilmon, 38,003 (La.App.2d Cir.04/14/04), 870 So.2d 607, writ denied, 04—2011 (La.12/17/04), 888 So.2d 866. Such identification procedures are generally permitted where the accused is apprehended within a short time after the commission of the offense and is returned to the scene of the crime for on-the-spot identification or when identification is made shortly after the commission of the crime. Such prompt identification, under the appropriate circumstances, promotes accuracy as well as expediting the release of innocent suspects. State v. Steward, 42,705 (La.App.2d Cir.02/13/08), 975 So.2d 829.
A defendant bears the burden of proof on a motion to suppress an out-of-court identification. La. C. Cr. P. art. 703(D); State v. Steward, supra. In State v. Taylor, 09-2781 (La.03/12/10), 29 So.3d 481, 482, our supreme court held that:
A defendant seeking to suppress an identification has a two-fold burden: the defendant must prove both that the identification itself was suggestive and that there was a likelihood of misidenti-fication as a result of the identification procedure used. (Emphasis added).
Further, in State v. Taylor, supra at 482-3, the court set out instructive factors concerning suggestive circumstances and the likelihood of misidentification as follows:
[T]he United States Supreme Court’s decision in Manson v. Brathwaite (432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)) is instructive, and provides a five factor test: 1) the witness’s opportunity to view the defendant at the time the crime was committed; 2) the degree of attention paid by the witness during the commission of the crime; 3) the accuracy of any prior description; 4) the level of the witness’s certainty displayed at the time of the identification; and 5) the length of time elapsed between the crime and the identification.
In this ease, within 30 minutes of the robbery, Glenn was apprehended and officers transported the victim across the street to “identify the person that robbed her at gunpoint.” Glenn was standing in a spotlight, handcuffed, between two police officers and beside a police car, and was bleeding from the wounds to his head when the victim identified him. Although this identification procedure was arguably suggestive, the totality of the circumstances does not indicate that there was a substantial likelihood of misidentification.
Howard had a good opportunity to observe Glenn at the time of the robbery as he stood “right over” her. Howard was attentive during the robbery and was able to testify about what she was doing and statements made by Glenn. Shortly after the robbery, Howard gave the officers a physical description of the robber, his clothing, his gun with a laser sight and the money that he took, all of which was corroborated by the hotel surveillance video. In addition, the cash and gun with the laser sight were in defendant’s possession at the time of his apprehension. Howard was confident in her identification of Glenn. She identified him approximately 30 minutes after the robbery. Such a prompt confrontation ensured a reliable identification as Howard could have easily recalled the appearance of Glenn after only a short amount of time had passed.
Any suggestiveness of the identification procedure used was outweighed by the overall reliability of Howard’s identifica *530 tion, and there was no substantial likelihood of misidentification. The trial court properly denied Glenn’s motion to suppress the one-on-one identification.
| (Motion to suppress confession
The defense argues that the trial court erred in denying Glenn’s motion to suppress his confession. The defense claims that Glenn was questioned and made the statement before he received appropriate- and necessary medical care and while he was intoxicated and/or high on crack cocaine. The defense contends that these circumstances rendered Glenn’s confession involuntary such that it should have been suppressed at trial.
The state must establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Coleman, 48,168 (La.App.2d Cir.07/17/13), 121 So.3d 703, writ denied, 13-1990 (La.05/02/14), 138 So.3d 1237. Intoxication is relevant to the question of whether a Miranda waiver was knowing and intelligent. State v. Thornton, 12-0095 (La.03/30/12), 83 So.3d 1024. In this case, Glenn only argues that his statement was not voluntary. Even so, the Miranda rights were correctly given and knowingly waived. Glenn signed the rights waiver form after they were read to him by Detective Turpén. His recorded statement clearly shows that his speech was not slurred but was clear, consistent and oriented in time and place.
The requirement that Miranda warnings be given does not dispense with a due process inquiry into the voluntariness of a confession. Assuming there has been no Miranda violation, only confessions procured by coercive official tactics should be excluded as involuntary. The accused’s infirm mental condition by itself does not make the confession involuntary; coercive police activity is a necessary predicate to a finding that the |7confession is not voluntary and thus inadmissible. State v. Thornton, supra; 9A Fed. Proc., L.Ed. § 22:1498.
In State v. Thornton, supra at 1025, our supreme court stated:
[O]ur current jurisprudence subscribes as a matter of state law to the rule of Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986), that “coercive police activity is a necessary predicate to the finding that a confession is not ‘voluntary* within the meaning of the Due Process Clause of the Fourteenth Amendment.”
[[Image here]]
After Connelly, diminished mental capacity, which may result from intoxication, remains relevant to the voluntariness of a statement only to the extent that it “made mental or physical coercion by the police more effective.”
The state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Fisher, 46,997 (La.App.2d Cir.02/29/12), 87 So.3d 189. Voluntariness is determined on a case-by-case basis, under a totality of the circumstances standard. State v. Parker, 48,339 (La.App.2d Cir.10/09/13), 124 So.3d 516. The trial court is afforded great discretion in ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. State v. Lee, 05-2098 (La.01/16/08), 976 So.2d 109, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). In reviewing the correctness of the trial court’s ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. State v. Brooks, 92-3331 (La.01/17/95), 648 So.2d 366; State v. Fisher, supra.
*531 At the motion to suppress hearing, Glenn testified that during the interview he was in pain and had “no focus at all” as a result of the injuries 18he sustained when he was apprehended by the officers. He does not claim any physical coercion at the time he gave his statement. Glenn testified that on the day of the robbery he drank enough beers to become intoxicated, but denied that he had smoked any crack cocaine. He denied that the officers found a crack pipe in his pocket. Glenn testified that before the interview he told Detective Turpén that he did not want to make a statement, that he needed to see a doctor and that he requested an attorney. He testified that Detective Turpén told him that he “was not going to see a medical doctor until I talk [sic] to somebody.”
The only statement by Glenn was after he was taken to the police station from the scene of his arrest. In that recorded statement, Detective Turpén first advised him of his Miranda rights and Glenn signed a form indicating that he understood and wanted to waive his rights and make a statement. Detective Turpén testified that he did not force or coerce him into making a statement, nor did he make any promises to Glenn in exchange for making a statement. In the recorded interview, Glenn gave a detailed account of the events that occurred prior to and during the robbery, answered Detective Tur-pen’s questions in a coherent and rational manner, and even stated that he “knew he was going to have to do some time.”
In the interview, Glenn stated that before the robbery he had about $20 worth of crack cocaine; he took a hit of crack and then drank a beer and took another hit; and, then he went across the street to the Regency Inn. He described exactly what happened but added that when the victim screamed he was frightened and almost left but she moved away and he jumped over lathe counter and took the money. He said he pointed the gun at her. He said it was not his gun. He said he got the gun from his drug dealer. When asked why he committed the robbery, he said, “Sometimes'crack overpowers you.”
Glenn now claims that he was in pain and had “no focus” during the interview because of the injuries he sustained when he was apprehended. However, he does not claim any physical coercion by law enforcement officers, except for the physical force used to effectuate his arrest. Detective Turpén testified that Glenn never indicated that he wanted to stop the interview and never complained of any physical pain. Most telling is the recorded interview, which fully supports the officer’s testimony. t
The state met its burden of proving that Glenn was advised of and knowingly waived his Miranda rights, and for due process purposes his statement was not involuntary, ie., it was not the product of a will overborne by police coercion.

Conclusion

For the foregoing reasons, defendant’s convictions and sentences are affirmed.[2]
AFFIRMED.

. The trial court denied Glenn's motion for post-verdict judgment of acquittal and his pro se motion for a new trial. Glenn was adjudicated a second felony offender (simple burglary and felony possession of stolen things) on the armed robbery conviction, and a sentencing hearing was held. A motion to reconsider the sentences was denied.

. For possession of a firearm by a convicted felon, the trial court failed to impose the mandatory fine of not less than $1,000, nor more than $5,000 as required by La. R.S. 14:95.1(B); However, considering defendant’s apparent indigent status, we decline to remand the case for correction of the defendant’s sentence to include such a fine.