BLEICH, J. (Ad Hoc )
This criminal appeal arises from the First Judicial District Court, Parish of Caddo. On January 28, 2016, following a jury trial, the defendant, Roy Arlen Van Nortrick, was convicted as charged of two counts of molestation of a juvenile, violations of La. R.S. 14:81.2. On June 1, 2016, Van Nortrick was sentenced to two consecutive 45-year sentences, with the first 25 years of each sentence to be served without the benefit of parole, probation, or suspension of sentence. For the following reasons, Van Nortrick's convictions and sentences are affirmed.
FACTS
In September, 2010, J.M. and her younger sister, R.M., went to live with their aunt, Shelly Clark, after being involved in a serious automobile accident which resulted in their mother's arrest and subsequent incarceration. J.M. suffered substantial injuries from the crash, including a fractured skull and a traumatic brain injury. As part of her rehabilitation, according to J.M. and Clark, J.M. was encouraged to keep a journal, which her aunt would read daily for accuracy. The journal was a means for J.M. to stimulate her memory, as well as practice her handwriting. On or about July 2, 2013, Clark discovered a troubling entry in J.M.'s journal detailing the sleeping arrangements in the home she had occupied with her parents, sister, brother, Van Nortrick, and his young son prior to the automobile accident. As a result of the journal entry, Clark took J.M. aside and asked her if she had ever been touched inappropriately by anyone. J.M. confided to her aunt *813 that Van Nortrick had sexually molested both her and her sister, R.M., when he lived with their family in Mooringsport and Shreveport, Louisiana. When Clark spoke separately with R.M., she corroborated her sister's allegations that Van Nortrick touched her inappropriately.
On July 10, 2013, the sisters were individually interviewed at the Gingerbread House, a child advocacy center in Shreveport. Both gave detailed accounts of various sexual incidents with Van Nortrick occurring in 2009 and 2010.
Van Nortrick was arrested on November 18, 2013, in Michigan, where he was living at the time, and extradited to Shreveport. Upon arriving in Shreveport, Van Nortrick was immediately transported to a Caddo Parish Sheriff's Office and gave a statement to police. Initially, Van Nortrick denied any wrongdoing, but, after being confronted with details provided by J.M. and R.M. of specific incidents of sexual abuse by him, Van Nortrick admitted to several sexual encounters with both girls. A month later, Van Nortrick was charged by bill of information with two counts of molestation of a juvenile, violations of La. R.S 14:81.2. The bill specifically alleged that the victims, J.M. and R.M., were under the age of 13 at the time of the offenses.
The case proceeded to trial and on January 28, 2016, a unanimous jury returned a verdict finding Van Nortrick guilty as charged on both counts. His motion for post-verdict judgment of acquittal and a motion for new trial were both denied by the trial court prior to sentencing. On June 1, 2016, Van Nortrick was sentenced to 45 years at hard labor for each conviction, with the first 25 years of each sentence to be served without the benefit of parole, probation, or suspension of sentence. The trial court ordered the sentences to be served consecutively.
Van Nortrick subsequently filed a motion to reconsider sentence, arguing that his consecutive sentences were unconstitutionally excessive, especially in light of his poor health. The trial court denied his motion. Van Nortrick's motion for an out-of-time appeal was granted, and this appeal ensued.
DISCUSSION
Sufficiency of the Evidence
In both a counseled and pro se assignment of error, Van Nortrick argues that the evidence presented was insufficient to convict him. Specifically, Van Nortrick challenges the accuracy of J.M.'s testimony given her traumatic brain injury. Further, he alleges that J.M. and R.M. held some animosity toward him because he had a sexual relationship with their mother when he lived with the family and took his son, J.M. and R.M.'s cousin, away from them when he moved out of state. In further support of his claim that the evidence was insufficient, Van Nortrick points to his trial testimony wherein he denied ever touching J.M. or R.M. inappropriately. We disagree and note the following evidence that was adduced at trial.
Clark, who identified Van Nortrick in open court and explained that she knew him because he had been married to her stepsister, testified that J.M. was prescribed to keep a journal in order to assist with the recuperation for her brain injury. Clark was instructed to read the journal for accuracy, and as a result she read J.M.'s entries regarding Van Nortrick's actions with both girls. Distressed, Clark spoke with the girls, who individually confirmed the allegations to Clark. As a result of the journal entries and the resultant conversations, on July 3, 2013-a day after learning of Van Nortrick's inappropriate contact with her nieces-Clark went to the Bossier Parish Sheriff's Office to report *814 the incidents. Because the alleged crimes occurred in Caddo Parish, her report was forwarded to the Caddo Parish Sheriff's Office. Clark brought the girls to the Gingerbread House the following week to be interviewed.
According to Clark, at the time of trial J.M. was in high school and a good student-visual impairment was the only substantial impairment she continued to suffer as a result of the automobile accident. J.M. is completely blind in her left eye and has limited vision in her right eye.
Alex Person, a forensic interviewer at the Gingerbread House, also testified at trial. According to Person, she interviewed both J.M. and R.M. separately on July 10, 2013. Person explained that, as is the policy at the Gingerbread House, she asked both girls non-leading questions to gather information regarding any sexual abuse the children may have suffered. Person identified video recordings of the interviews. Person also identified notes she took during the interviews and anatomical drawings which were used by J.M. and R.M. during their respective interviews to indicate where they had been touched, or had touched another person, on the genitals.
The sisters' father, P.M., testified at trial as well. He stated that during 2009 and 2010, Van Nortrick and his young son were living in P.M.'s home, along with P.M.'s wife, his daughters, and his son. P.M. worked two jobs to support his family and explained that his wife, who was hospitalized for some time while Van Nortrick was living with the couple, was unable to keep a job. According to P.M., Van Nortrick exercised control or supervision over both R.M. and J.M. during various times. P.M. was unaware that Van Nortrick was sexually abusing his daughters, but suspected that Van Nortrick was engaged in a sexual relationship with his wife.
J.M. testified at trial that in 2009 and 2010, she was living with her parents, her sister, her brother, Van Nortrick, and his son in her parents' home. J.M. corroborated Clark's testimony that as part of her rehabilitation she wrote in a journal daily. J.M. identified entries from her journal in open court and recounted speaking with Clark about the fact that Van Nortrick had touched her and her sister inappropriately.
J.M. recalled going to the Gingerbread House and being interviewed, and her interview was then played in open court. In the video, J.M. stated that two men who had lived with her family, Mark Vincent and Van Nortrick, had "touched her in a way she wasn't supposed to be touched." J.M. stated that sometime in 2009 or 2010, when her family was living in Shreveport and Mooringsport, Nortrick "put his finger in me" and "tried to put his you know what in me." J.M. also stated that Notrick "tried to put his you know what in my butt" and wanted J.M. to "touch his you know what" but she refused. J.M. used anatomical drawings of a woman and a man to circle the body parts she identified as a "T.T." and a "you know what." Van Nortrick told J.M. not to tell anyone what he had done to her. J.M. explained that she witnessed Van Nortrick putting his finger in R.M.'s "T.T." and tried to put his penis in R.M.'s "T.T." and anus. J.M. believed that Van Nortrick was having sex with the girls' mother when he was living with them.
At trial, J.M. clarified that Vincent and Van Nortrick lived with her family at different times, and she clearly recalled the separate acts of abuse by the two men. J.M. testified that the acts of molestation by Van Nortrick always occurred in her brother's room while her father was at work, her brother was not home, and her mother was home, but asleep. J.M. explained that she and her sister, R.M., witnessed *815 each other being sexually abused by Van Nortrick.
During cross-examination, J.M. conceded that at the time she wrote the journal entries about Van Nortrick she was having difficulty with her long-term and short-term memory and was having visions and hearing voices.
R.M. testified at trial that Van Nortrick lived with her, her sister, J.M., her brother, and parents. R.M. recalled telling Clark about how Van Nortrick touched her inappropriately and remembered her Gingerbread House interview. R.M. identified anatomical drawings she wrote on during her interview. The video recording of R.M.'s Gingerbread House interview also was played in open court. In the video, R.M. stated that Van Nortrick forced her and her sister, J.M., to get in the shower with him. He also forced R.M. to put her mouth on his "toy" or "thing" and put his finger in her "toy." In the video, R.M. recounted that Van Nortrick also touched R.M. on her "toy" with his tongue while he made R.M. put her mouth on his "thing." R.M. stated that Van Nortrick put his "toy" in her mouth, vagina, and anus. R.M. explained that Van Nortrick would achieve an orgasm during these incidents, and she and J.M. witnessed each other's abuse. R.M. recalled one specific incident where she was with Van Nortrick and her father fishing at a pond. She was cold and Van Nortrick offered to keep her warm; R.M. sat next to him and, under the cover of a blanket, Van Nortrick used his hand to touch R.M.'s vagina.
At trial, R.M. identified notes she had taken prior to her interview which described some of the acts committed by Van Nortrick. R.M. explained that she intended on bringing the notes to the interview "in case I forgot something." R.M. testified that the incidents with Van Nortrick occurred more than five times.
During cross-examination, R.M. stated that she was upset when Van Nortrick left Louisiana, because she missed his son, R.M.'s cousin. She admitted that she "probably" contacted Van Nortrick on social media and asked him to bring her cousin back to Louisiana.
Detective Jared Marshall, a youth services detective with the Caddo Parish Sheriff's Office, testified that he spoke with Clark after receiving her report from the Bossier Parish Sheriff's Office. Detective Marshall stated that at the time J.M. and R.M. were molested by Van Nortrick, approximately 2009 through 2010, J.M. would have been nine or ten years old and R.M. would have been seven or eight. Detective Marshall scheduled and observed J.M.'s and R.M.'s Gingerbread House interviews.
Detective Marshall identified a video recording of Van Nortrick's police interview which was then played for the jury. Prior to being interviewed, Van Nortrick was informed of and waived his Miranda rights. Van Nortrick initially denied any inappropriate conduct with either J.M. or R.M. In the interview, he confirmed that he lived with the girls and their family in their home in Shreveport and Mooringsport from around March, 2008, to January, 2010, and his description of the sleeping arrangements in the home was the same as those given by J.M. and R.M. Van Nortrick further explained that he would watch the girls at times, particularly when their mother was unable to do so, because she was abusing prescription pain medication. Eventually, when the interviewers confronted him with the allegations made by J.M. and R.M., Van Nortrick admitted to various incidents of inappropriate behavior with the girls. Specifically, he claimed that J.M. and R.M. jumped into the shower when he was showering, and he described slapping *816 them on their bare behinds to get them to leave. Van Nortrick also eventually acknowledged he touched J.M.'s vagina with his hand, he had anal sex with J.M., and she performed oral sex on him. In the interview, Van Nortrick admitted to performing oral sex on R.M. and said that R.M. touched his penis with her hand. He also acknowledged to police that J.M. and R.M. had witnessed each other's abuse, and he achieved an orgasm as a result of some of the sexual acts.
Detective Marshall testified that much of what Van Nortrick stated during his interview corroborated details disclosed by J.M. and R.M. during their Gingerbread House interviews, including the sleeping arrangements in the home, the fact that J.M. and R.M. were in the shower with him more than once, and several of the incidents of sexual contact between Van Nortrick and the girls.
Van Nortrick opted to testify at his trial and denied touching either J.M. or R.M. inappropriately at any time. At trial, Van Nortrick testified to being diabetic and claimed he did not receive any of his prescribed insulin on the day of his statement. As such, Van Nortrick stated he suffered from "high sugar" and had no memory of his arrival in Shreveport or his statement to Detective Marshall. During cross-examination, Van Nortrick also claimed that he did not recall doing any of the things he said he did to J.M. or R.M. during his interview, although he confirmed that he occasionally supervised the girls when he lived with them.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing the sufficiency of the evidence first is because the accused may be entitled to an acquittal under Hudson v. Louisiana , 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold , 603 So.2d 731 (La. 1992) ; State v. Cortez , 48,319 (La. App. 2 Cir. 08/07/13), 122 So.3d 588.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra ; State v. Tate , 2001-1658 (La. 05/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford , 2005-0477 (La. 02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 1994-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied , 2009-0725 (La. 12/11/09), 23 So.3d 913.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed , 43,786 (La. App. 2 Cir. 01/14/09), 2 So.3d 582, writ denied , *817 2009-0372 (La. 11/06/09), 21 So.3d 299. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette , 43,032 (La. App. 2 Cir. 02/13/08), 975 So.2d 753.
The testimony of the victim alone in a sexual assault case is sufficient to convince a reasonable factfinder beyond a reasonable doubt of a defendant's guilt. State v. Rives , 407 So.2d 1195 (La. 1981) ; State v. Wade , 39,797 (La. App. 2 Cir. 08/09/05), 908 So.2d 1220. Furthermore, such testimony alone is sufficient, even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Wade, supra.
Louisiana R.S. 14:81.2 defines the crime of molestation of a juvenile as follows:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
The evidence adduced at Van Nortrick's trial was sufficient to support the jury's verdict, and each element of the crime of molestation of a juvenile was proven beyond a reasonable doubt. The jury heard the testimony of the victims, J.M. and R.M., as well as their Gingerbread House interviews that Van Nortrick engaged in various sexual acts with them when they were under the age of 13. Significantly, J.M.'s and R.M.'s statements and trial testimony were corroborative of each other and consistent with their claims that they witnessed each other's abuse. Clark testified that she read J.M.'s journal entries, which led to her suspicion of abuse. J.M.'s and R.M.'s father testified that Van Nortrick had the opportunity to exert control and/or supervision over the girls. Van Nortrick testified that when he was 35 and 36 years old, in 2009 and 2010, he lived with J.M. and R.M. and their parents. Van Nortrick also conceded at trial, as he had during his statement to police, that he exercised control or supervision over J.M. and R.M. when he lived with them. The jury's decision to accept J.M.'s and R.M.'s testimony as truthful and reject the defendant's self-serving trial testimony was reasonable and is entitled to great weight, especially considering Van Nortrick's corroboration of several of J.M.'s and R.M.'s claims of sexual abuse in his statement to police. Accordingly, Van Nortrick's assignment of error alleging insufficiency of the evidence lacks merit.
Defendant's Statement to Police
Van Nortrick also argues in a counseled and pro se assignment of error that the trial court erred in denying his motion to suppress and allowing the state to use his videotaped confession. Specifically, Van Nortrick alleges that he was unable to give a knowing and voluntary waiver of his Miranda rights, because he is diabetic and had not received his insulin as prescribed on the day of his interview with police. We disagree.
At the motion to suppress hearing, Caddo Parish Sheriff Sergeant Michael Middleton testified that on November 19, 2013, he transported Van Nortrick by plane from Michigan to Louisiana. Sergeant Middleton explained that Van Nortrick *818 would have received breakfast before his flight and then lunch either during the flight or during a layover. Sergeant Middleton testified that Van Nortrick may have mentioned that he was diabetic or insulin dependent, but Sgt. Middleton did not know whether he received any insulin on the day he was extradited.
Detective Marshall testified at the hearing that Van Nortrick was transported directly from the airport to the Caddo Parish Sheriff's office on North Market Street upon his arrival in Shreveport. The interview began at approximately 7:00 p.m. or 8:00 p.m., and Van Nortrick was talkative and did not appear to be under the influence of alcohol or narcotics. According to Det. Marshall, Van Nortrick spoke normally and engaged in a conversation. During his interview, Van Nortrick appeared lucid, knew he was no longer in Michigan, and explained that he wanted to return to be with his young son. Detective Marshall denied threatening, coercing, or intimidating Van Nortrick into making a statement. Van Nortrick was offered, and accepted, coffee when he first arrived and sometime later during the interview. Detective Marshall read Van Nortrick his Miranda rights, which he waived verbally and by signing a waiver of rights. He appeared to understand the implication of his waiver. Detective Marshall stated that it was not until the end of the interview that Van Nortrick made mention of needing food, and at that point the interview ended and Van Nortrick was transported to the Caddo Correctional Center where food and medical treatment were available.
The trial court also reviewed a copy of Van Nortrick's recorded interview. The recording shows Van Nortrick being seated in a small room and given coffee. The video reflects Van Nortrick being read his Miranda rights, which he waived. In the video, Van Nortrick did not appear to be under the influence of any intoxicating substances; his speech was not slurred. Approximately 39 minutes into the interview, Van Nortrick mentioned in passing that he was diabetic; however, he did not request food or medical attention at that time. He answered Detective Marshall's questions with rational, clear, and detailed responses, initially denying any inappropriate behavior with J.M. or R.M. However, when presented with specific details provided by J.M. and R.M. regarding their relationship with Van Nortrick, he slowly began admitting to inappropriately touching the sisters. He was careful, at least at first, to deny more serious allegations, such as vaginal or anal intercourse.
Van Nortrick also testified at the suppression hearing and related that he has been a diabetic for 38½ years and must receive insulin injections 4 to 6 times a day to control his blood sugar. Van Nortrick claimed receiving his last insulin injection prior to his interview on the evening of November 18, 2013. He stated that he did not remember talking to Det. Marshall and the last memory he had of November 19, 2013, was being at the Houston airport. Van Nortrick stated that although some of the things he said during the interview were true, he never touched J.M. or R.M. inappropriately. Van Nortrick testified that when he does not receive his insulin injections, he suffers from memory loss and becomes unable to distinguish where he is or what he is saying.
At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills , 354 So.2d 186 (La. 1977) ; State v. Callier , 39,650 (La. App. 2 Cir. 07/27/05), 909 So.2d 23, writ denied , 2006-0308 (La. 09/01/06), 936 So.2d 196.
*819 Before what purports to be a confession can be introduced into evidence, the state must affirmatively prove that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451.
The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Glenn , 49,705 (La. App. 2 Cir. 02/26/15), 162 So.3d 525, 530.
The admissibility of a confession is a question for the trial court. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Thibodeaux , 1998-1673 (La. 09/08/99), 750 So.2d 916, cert. denied , 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
In State v. Glenn, supra , the defendant claimed on appeal that his confession was involuntary and should have been suppressed at trial because he was intoxicated at the time he made his statement, and he had not received medical treatment for injuries sustained during his arrest. This court affirmed that defendant's convictions and sentences, explaining the relevant inquiry as follows:
The requirement that Miranda warnings be given does not dispense with a due process inquiry into the voluntariness of a confession. Assuming there has been no Miranda violation, only confessions procured by coercive official tactics should be excluded as involuntary. The accused's infirm mental condition by itself does not make the confession involuntary; coercive police activity is a necessary predicate to a finding that the confession is not voluntary and thus inadmissible.
State v. Glenn, supra , at 530 (citations omitted).
We do not believe the trial court erred in denying Van Nortrick's motion to suppress. It specifically noted that there was nothing in the recording to indicate to law enforcement that Van Nortrick needed medical treatment or was unable to understand his rights. In fact, the trial court commented that Van Notrick appeared lucid, conversational, and was oriented as to time and place. Furthermore, he gave coherent, detailed answers to Det. Marshall's questions, and seemed to possess enough awareness to deny serious allegations against his interest. The trial court also noted that Van Nortrick made several statements acknowledging the repercussions of his admissions, a fact which belied his claim that he was in an altered state of mind incapable of understanding his rights.
The video recording of Van Nortrick's statement indicates that he was advised of his Miranda rights, and he understood his rights and wished to waive them in order to speak with detectives. Detective Marshall testified that Van Nortrick was not threatened or coerced during the interview and spoke willingly with detectives. The video recording of the interview does not show any coercive police activity. The video recording shows that Van Nortrick appeared to be capable of understanding his rights: he was oriented as to time and place; knew the severity of the situation in which he found himself; and, had the mental acumen to avoid admission of more serious allegations. Accordingly, Van Nortrick's assignment of error alleging improper admission of his recorded statement is without merit.
*820 Excessive Sentence
In his third and final assignment of error, Van Nortrick complains that his consecutive sentences are excessive, especially in light of the fact that he is a first offender. The trial court sentenced Van Nortrick to 45 years at hard labor for each conviction, with the first 25 years of each sentence to be served without the benefit of parole, probation, or suspension of sentence. Additionally, because his crimes involved separate victims, the trial court ordered the sentences to be served consecutive to one another.
The penalty for molestation of a juvenile, when the victim is under the age of 13, is imprisonment at hard labor for not less than 25 years nor more than 99 years, with at least 25 years of the sentence imposed without the benefit of parole, probation, or suspension of sentence. La. R. S. 14:81.2.
The trial court has wide discretion in imposing a sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Mandigo , 48,801 (La. App. 2 Cir. 02/26/14), 136 So.3d 292, writ denied , 2014-0630 (La. 10/24/14), 151 So.3d 600. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion in sentencing. State v. Zeigler , 42,661 (La. App. 2 Cir. 10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque , 46,515 (La. App. 2 Cir. 09/21/11), 73 So.3d 1021, writ denied , 2011-2347 (La. 03/09/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner , 46,688 (La. App. 2 Cir. 11/02/11), 77 So.3d 1052.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree , 46,686 (La. App. 2 Cir. 11/02/11), 77 So.3d 1047.
Louisiana C. Cr. P. art. 883 states that when two or more convictions arise from the same act or transaction, or constitute part of a common scheme or plan, the terms of the imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, the trial court is given the discretion to impose consecutive penalties in cases where the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker , 2000-3200 (La. 10/12/01), 799 So.2d 461 ; State v. McDuffey , 42,167 (La. App. 2 Cir. 06/20/07), 960 So.2d 1175, writ denied , 2007-1537 (La. 01/11/08), 972 So.2d 1163. The factors considered when determining whether to impose concurrent or consecutive sentences include: (1) the defendant's criminal history, (2) the gravity or dangerousness of the offense, (3) the viciousness of the crimes, (4) the harm done to the victims, (5) whether the defendant constitutes an unusual risk of danger to the public, (6) the potential for the defendant's rehabilitation, and (7) whether the defendant *821 has received a benefit of a plea bargain. State v. McDuffey, supra , at 1181-82.
Furthermore, a trial court's failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support the consecutive sentences imposed. State v. Hampton , 38,017 (La. App. 2 Cir. 01/28/04), 865 So.2d 284, writs denied , 2004-0834 (La. 03/11/05), 896 So.2d 57, 2004-2380 (La. 06/03/05), 903 So.2d 452.
At Van Nortrick's sentencing hearing, the trial court noted that it had reviewed his presentence investigation report and the sentencing factors set forth in La. C. Cr. P. art. 894.1. The trial court specifically noted the following applicable aggravating factors regarding Van Nortrick: (1) his conduct in committing the offenses manifested deliberate cruelty to his victims; (2) his victims were especially vulnerable given their youthful age and family situation; (3) he used his position or status as his victims' caretaker to facilitate the commission of his crimes; and, (4) his victims suffered permanent psychological injury as a result of his actions. The trial court also noted that Van Nortrick had one previous conviction in Michigan, but that the crime was not similar in nature to his most recent offenses. Additionally, although the trial court considered the hardship faced by Van Nortrick's son due to his father's incarceration, the trial court noted that imposition of even the minimum sentences would cause Van Nortrick to be absent from his son's life during his childhood years.
The consecutive sentences imposed by the trial court in this case are not excessive. The trial court thoroughly discussed the applicable sentencing factors, including Van Nortrick's exploitation of his position of supervision and the irreparable harm done to his youthful and especially vulnerable victims. The relevant mitigating factors, such as his limited criminal history and the potential hardship faced by his son due to Van Nortrick's incarceration, were also considered by the trial court. As explained by the trial court, consecutive sentences were appropriate as the crimes involved two separate victims and separate acts.
Van Nortrick faced a 99-year sentence for each conviction. Over the course of more than a year, Van Nortrick, who acted as a caregiver to his victims, molested them on a regular basis. Given his deplorable and predatory behavior, the midrange sentences imposed by the trial court do not shock the sense of justice. Accordingly, Van Nortrick's assignment of error alleging that his sentences are excessive is without merit.
Error Patent
A review of the record reveals there is no showing that Van Nortrick waived the sentencing delay required by La. C. Cr. P. art. 873, which provides that:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
In the case sub judice , Van Nortrick was sentenced immediately following the denial of his motion for new trial. There is no showing on the record that he waived the delay required by La. C. Cr. P. art. 873.
In State v. White , 404 So.2d 1202, 1204 (La. 1981), the Louisiana Supreme Court explained that the failure of a trial court to observe the delay, or obtain a waiver thereof, following the denial of a defendant's *822 motion for a new trial may be harmless error:
Although C.Cr.P. Art. 873 unequivocally requires the trial court to delay imposition of sentence for a period of at least 24 hours after denial of post-trial motions, there has been no objection raised regarding the sentence imposed in this case and no showing or suggestion that defendant was prejudiced by the failure to observe the delay. Judicial efficiency therefore dictates that this court need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged.
In State v. White, supra , the trial court noted that the defendant had ample time to argue his motion for new trial, that there was a substantial time period from the date of the defendant's conviction to the date of sentencing, and that there were "no indications that defendant's sentence was hurriedly imposed without due consideration." Id. at 1204.
However, in State v. Augustine , 555 So.2d 1331 (La. 1990), the Louisiana Supreme Court found the error to be reversible, vacated the defendant's sentence, and remanded the matter to the trial court for resentencing. In doing so, the court noted that the case was distinguishable from State v. White, supra , because the defendant was complaining about the error and also alleged that his sentence was excessive. The court further noted:
For all we know, a reimposition might result in a sentence less than 40 years for this man, who was 18 years old at the time of the offense, who robbed his victim with a racing starter's pistol, and who did not have any prior convictions at the time of the offense.
In State v. Kisack , 2016-0797 (La. 10/18/17), 236 So.3d 1201, 2017 WL 4681356, the La. Supreme Court, noting its disapproval of the appellate court's finding of an "implicit" waiver of the delay, reversed a defendant's habitual offender adjudication and remanded the case for further proceedings based, in part, on the trial court's failure to obtain a waiver of the delay provided in La. C. Cr. P. art. 873. In doing so, the court noted:
Nonetheless, an error in failing to observe the statutory sentencing delay may still be found harmless. Under the circumstances presented here, in which a defendant who faced a sentencing range of 20 years to life and received the maximum sentence authorized for a fourth-felony offender for possession of a contraband cell phone, it is difficult to conclude the error is harmless.
Unlike the defendants in State v. Augustine, supra , and State v. Kisack, supra , Van Nortrick does not complain about the error. Additionally, as was the case in State v. White, supra , a substantial amount of time passed from the date of Van Nortrick's conviction, January 28, 2016, to the date of his sentencing on June 1, 2016, and a presentence investigation report was prepared. The record also reveals that the trial court spent a significant amount of time enunciating the reasons for the sentences imposed prior to their imposition. Furthermore, although Van Nortrick complains that his sentences are excessive, he did not receive the maximum sentence for either of his convictions. Accordingly, the circumstances presented here indicate that the error was harmless.
CONCLUSION
Therefore, for the stated reasons, Roy Arlen Van Nortrick's convictions and sentences are affirmed.
AFFIRMED.